IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES | * |
| | * |
| v. | *   Crim. Case No.:  SAG-08-00117 |
| | * |
| TAMAR BALDWIN, | * |
| | * |
| Defendant. | * |
| | * |

*   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM OPINION**

Defendant Tamar Baldwin, who is serving a 240-month sentence in the Bureau of Prisons, filed a self-represented motion seeking compassionate release, which was later supplemented by his counsel in a separate motion. ECF 178, 189. Baldwin received his sentence in 2008 following his guilty pleas to armed bank robbery and using and carrying a firearm in connection with a crime of violence. ECF 57. He argues that because he would no longer qualify as a career offender, if he were sentenced today, he would have proceeded to sentencing with a far lower advisory guidelines range and would have received a much lower sentence. *See* ECF 189 at 6. He contends that the extended length of his sentence, in combination with his evident rehabilitation, constitutes an extraordinary and compelling reason supporting his release from custody at the present time, just short of one year before his currently scheduled release date. *Id.* at 11–14. The Government has filed an opposition to Baldwin's motion, ECF 195, and Baldwin filed a reply, ECF 196. This Court notes that just weeks ago, it afforded the Government an additional opportunity to supplement its submission in connection with a similar motion filed by Baldwin's co-defendant with victim impact statements in accordance with the Crime Victims' Rights Act, 18 U.S.C. § 3771, ECF 181, but no statements were submitted. This Court does not see a need to duplicate that procedure and

finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons addressed below, this Court will GRANT Baldwin's motions and will reduce his sentence to time served.

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239–41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." *Id.* Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i).

The Government does not dispute that Baldwin adequately exhausted his administrative remedies before filing his motion. *See* ECF 195 at 5. Thus, this Court turns to whether he has established any extraordinary and compelling reason warranting further consideration of compassionate release.

Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under

2

§ 3582(c)(1)(A). *See* 28 U.S.C. § 994(t). In response, the Commission defined "extraordinary and compelling reasons" to exist where (1) the defendant is suffering from a terminal or serious medical condition; (2) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (3) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; (4) the defendant was the victim of physical or sexual abuse committed by an individual with custody or control over the defendant while he was incarcerated; (5) "other reasons" similar in gravity; or (6) the defendant has served at least 10 years of an "unusually long sentence" and a change in law has produced a "gross disparity" between the sentence being served and the sentence likely to be imposed when the defendant files his motion. *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b) (U.S. SENT'G COMM'N 2023). This Court has authority to consider any "extraordinary and compelling reason" a defendant might raise, regardless of the BOP's determinations. *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020).

Because of a change in the law following Baldwin's conviction, neither of his two previously qualifying convictions would make him a career offender today. *See United States v. Royal*, 731 F.3d 333, 340–42 (4th Cir. 2013) (determining that second-degree assault is not a crime of violence); *United States v. Norman*, 935 F.3d 232, 237–38 (4th Cir. 2019) (determining that conspiracy to distribute controlled substances is not a qualifying controlled substance offense). As a result, if sentenced today, Baldwin would no longer be a career offender under the sentencing guidelines. Because the changed case law is not retroactive, *see Baldwin v. United States*, JFM-13-2006, 2013 WL 6183020, at *2 (D. Md. Nov. 25, 2013), Baldwin is not entitled to automatic resentencing. However, Baldwin argues that because he is no longer a career offender, his sentence

today would be far lower than the sentence he received in 2008, when the sentencing court considered the career offender sentencing guidelines range. At that time, Baldwin's sentencing guidelines as a career offender resulted in an advisory range of 188–235 months in prison, plus a mandatory 84-month consecutive sentence for his handgun conviction. The sentencing judge imposed a below-guidelines sentence of 240 months (156 months for the armed robbery count plus 84 months consecutive for his handgun conviction).

In combination with the length of his sentence, Baldwin also cites to his rehabilitation. ECF 189 at 11. He concedes that his initial years in the BOP were fraught with disciplinary infractions, but argues a significant "positive trend" in his behavior. He has been entirely infraction-free for the past four years. *Id.* Additionally, he cites the recent tragic death of his son as an event that has had a marked impact on his outlook and future goals. *Id.* at 12–13. While the Government correctly notes that rehabilitation alone cannot be an extraordinary and compelling reason justifying relief, 28 U.S.C. § 994(t), this Court is permitted to consider rehabilitation in combination with other factors. *See United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020) (affirming grant of compassionate release where district court considered strong record of rehabilitation).

In the unique circumstances of this case, this Court agrees that the length of Baldwin's sentence, in combination with his strong evidence of rehabilitation in recent years, constitutes an extraordinary and compelling reason to consider whether the 18 U.S.C. § 3553(a) factors warrant his release. It is beyond dispute that Baldwin would not receive a 240-month sentence today, given that his advisory guidelines range would be only 121-to-130 months' imprisonment. And Baldwin has already well-exceeded the sentences within those lower guidelines by about six years. Even had the sentencing judge believed that the advisory guidelines range was too low, he would have been unlikely to double the low end of that range. Moreover, this Court is persuaded by the

trajectory of positive conduct that Baldwin has displayed. He has been infraction free for four years, has grown in his faith and in his commitment to leatherworking, and has experienced a personal tragedy, resulting from gun violence, that inevitably altered his perspective on the risks associated with criminal conduct. These facts, in combination, lead this Court to conclude that Baldwin has established an extraordinary and compelling reason to proceed to consider the § 3553(a) factors in this case.

Turning to the history and characteristics of the defendant, Baldwin's current circumstances place him in a different position than at his sentencing in 2008. At the time of his sentencing, Baldwin had had two recent serious criminal convictions in addition to the violent conduct in the instant case. He was on the wrong path. Today, Baldwin has been infraction-free for four years, has a viable release plan complete with a job offer and family support, and has an artistic talent that he has fostered while incarcerated that may provide him a means to open his own business venture. He also has experienced a personal loss that will require him to heal alongside his family and loved ones and will motivate him to remain involved, along with his son's mother, in doing good for the community to honor his son's memory.

Looking at the nature and circumstances of the offense, Baldwin's offenses of conviction are of course extremely serious. His crimes were violent. He intimidated innocent victims and placed them in grave danger. In considering just punishment for those offenses, however, this Court notes the sixteen years that Baldwin has already served. That lengthy sentence also serves as a deterrent, both to the public and to Baldwin. The public will be protected from future crimes committed by Baldwin because he will commence a period of home detention to be followed by strict supervised release. He will have to complete that period without incident or face additional

consequences. During that period of more intense supervision, he can also receive training and treatment to facilitate his reassimilation into the community in a more effective manner.

Further, Baldwin's present anticipated release date, if this Court does not reduce his sentence, is November 26, 2025. This Court is not persuaded that an additional 14 months of incarceration (which will likely be even shorter if, like most defendants, Baldwin is to be released to community confinement) is necessary to ensure Baldwin is able to comply with the conditions of supervision or to protect community safety. Despite his criminal history during his younger days and the infractions during his initial tenure in the BOP, the recent record Baldwin has established suggests that he no longer poses a significant threat to community safety, once he is released to carefully crafted conditions of supervised release including an initial period of home detention. Accordingly, this Court believes that reducing Baldwin's sentence to time served, with a period of four months of home detention, is sufficient, but not greater than necessary, to address the purposes of the sentencing statute, 18 U.S.C. § 3553(a).

This Court therefore will enter an amended judgment reducing Baldwin's sentence to time served and will amend the judgment to add a four-month period of home detention to his conditions of supervision. The release will be stayed for a period of fourteen days from the date of this Order to allow medical clearance, quarantine, if necessary, and the implementation of a release plan.

Date: September 26, 2024

/s/
Stephanie A. Gallagher
United States District Judge